IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CLARENCE BOGAN, | ) |
| | ) |
| Petitioner, | )  Case No.: |
| | ) |
| vs. | )  JUDGE: |
| | ) |
| THE STATE OF OHIO, c/o | ) |
| DAVID YOST, Attorney General | ) |
| MICAHEL C. O'MALLEY, Cuyahoga | ) |
| County Prosecutor, CLIFFORD PINKNEY, | ) |
| Cuyahoga County Sheriff, and SHIRLEY | )  (Evidentiary hearing Requested) |
| STRICKLAND SAFFOLD, Judge Cuyahoga | ) |
| County Court of Common Pleas, | ) |
| | ) |
| Respondents. | ) |

**PETITION FOR WRIT OF HABEAS CORPUS**

NOW COMES Petitioner, Clarence Bogan, by and through his Attorneys, Mark A. Stanton, Cuyahoga County Public Defender and Erika Cunliffe, Assistant Public Defender, and petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. In support thereof, Petitioner maintains as follows:

**JURISDICTIONAL STATEMENT**

Petitioner Clarence Bogan is a citizen of the State of Ohio and the United States and is currently under Indictment in Cuyahoga County, Ohio in Case No. 16 CR 605087, he is being detained in the Cuyahoga County Jail, and is facing retrial on murder, felonious assault, and domestic violence charges. The trial court has indicated that it intends to proceed to trial immediately. Mr. Bogan invokes the jurisdiction of this Court under 28 U.S.C. § 2241 to seek to bar this retrial on grounds that such a proceeding would violate the Double Jeopardy Clause.

Federal adjudication of double jeopardy claims raised pretrial is warranted where the claims have been presented, rejected, and exhausted in the State court and submitting to trial would occasion the very violation the accused seeks to avoid – a prosecution that violates the double jeopardy prohibition.  This Petition has been filed pursuant to Title 28 U.S.C. § 2241. Section 2241 has been recognized as a potential source of habeas review for state pretrial detainees, where the detainee meets two requirements. First, the petitioner must be "in custody." 28 U.S.C. § 2241(c); *Dickerson v. Louisiana*, 816 F.2d 220, 224-26 (5th Cir.), cert. denied, 484 U.S. 956, 98 L. Ed. 2d 378, 108 S. Ct. 352 (1987). Second, the petitioner must have exhausted his available state remedies. Dickerson, 816 F.2d at 224. As discussed more fully herein, Mr. Bogan's circumstances meet both of these requirements.

Respondent David Yost is the Attorney General of the State of Ohio. His offices are located in the Rhodes Office Tower, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215.

Respondent Michael C. O'Malley is the Cuyahoga County Prosecutor. His office is at The Justice Center, 1200 Ontario Street, 9th Floor, Cleveland, Ohio 44113.

Respondent Clifford Pinkney is the Cuyahoga County Sheriff who oversees the County Jail where Petitioner is currently being detained. His office is located at 1215 West 3rd Street, Cleveland, Ohio 44113.

Respondent Shirley Strickland Saffold is the Common Pleas Judge assigned to preside over Petitioner's retrial in the Cuyahoga County, Ohio Court of Common Pleas located at the Justice Center, 1200 Ontario Street, Courtroom 21B, Cleveland, Ohio 44113.

## STATEMENT OF THE CASE

On April 8, 2016, a Cuyahoga County grand jury issued an indictment charging Appellant Clarence Bogan with aggravated murder as set forth under R.C. 2903.01(A), murder under R.C. 2903.02(A), murder under R.C. 2903.02(B), felonious assault under R.C. 2903.11(A)(1), and domestic violence as provided under R.C. 2919.25(A).

Mr. Bogan pleaded not guilty and the matter proceeded to a jury trial on July 13, 2017. At the conclusion of the State's case-in-chief, the trial court dismissed the aggravated murder charge under Ohio Crim. R. 29. The jury retired to deliberate on the remaining counts. Early on the third day of deliberations the jury sent out a note saying that it was at an impasse. The court immediately declared a mistrial, discharged the jury, and scheduled a retrial for August 22, 2017.

The Court issued a written decision declaring the mistrial on July 31, 2017. (Ex. A) Mr. Bogan appealed that decision to the Eighth District Court of Appeals which affirmed the trial court on October 18, 2018. *State v. Bogan*, 8th Dist. Cuyahoga No. 106183, 2018 Ohio 4211, ¶ 28. (Ex. B) The court denied Bogan's motions to reconsider, to certify a conflict, and for reconsideration *en banc* on December 19, 2018. Mr. Bogan's request for discretionary appeal to the Ohio Supreme Court was rejected on April 3, 2019.

The matter is now before the trial court which has appointed the Cuyahoga County Public Defender's Office to represent Mr. Bogan in the retrial.

## STATEMENT OF THE FACTS

The charges stemmed from the death of Mr. Bogan's girlfriend, Stacy Tucker, which occurred sometime in the early morning hours of February 10, 2016. At Bogan's trial, the prosecution maintained that Ms. Tucker died as a result of blunt force trauma

3

sustained during a physical altercation with Bogan. Bogan disputed that theory and countered that Tucker, who suffered from mental illness and a chronic addiction to drugs and alcohol, died from a ruptured ovarian cyst – a condition he did not cause – and that her death could have been prevented had EMS responded more promptly to Bogan's 911 call.

During jury selection, Mr. Bogan had an unfortunate outburst that prompted his counsel to request a mistrial. The State objected and the trial court denied the request. Counsel later also sought a mistrial during the trial itself because he feared the jury was tainted by improper remarks from prosecution witnesses. That request was also denied. The State did complain to the court about Bogan's voluble conduct during parts of the trial, but no one thought it was egregious enough to warrant a mistrial.

The next morning, which was a Friday, the jury sent out a request for transcripts of several witnesses' testimony. They also asked the court to clarify the definition of "person living as a spouse" under the domestic violence charge. The court responded to both requests with no objection from either party. (Tr. 5-7)[1] Later that same day, the jury foreperson sent out the following note: "A number of jurors including myself are questioning the competency of juror, ___, (the court intentionally left out that this was juror #5) to deliberate and render a verdict." (Tr. 8) The Court responded by instructing the jury as follows:

> During your deliberations you must consult with one another, consider each other's views and deliberate with the objective of reaching an agreement if you can do so without disturbing your individual judgment.
>
> Each of you must decide this case for yourself but you should do so only after a discussion and consideration of the case with your fellow jurors. Do not hesitate to change an opinion if convinced that it is wrong. However, you should

---

[1] This partial transcript is attached to this pleading as Ex. C.

4

not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinion of other jurors.

(Tr. 9) Neither party objected to this instruction.

After a lunch break, at the State's request, the trial court initiated a hearing to determine whether juror misconduct had occurred. Apparently, an observer in the gallery had seen what she believed to be communication between Mr. Bogan and Juror number 5. During that proceeding the State of Ohio called Joanne Gibbons. Ms. Gibbons worked at the courthouse and had watched much of the trial because her nephew had been married to Stacy Tucker. (Tr. 10) Ms. Gibbons testified that she saw Mr. Bogan "mouth words over as he was looking over this way to somebody. At the time the person testifying was the lady from the Coroner's Office. And then I saw the juror, Juror Number 5, watching the defendant and smile back. That's it." When the prosecutor asked her if she saw the juror say anything back or otherwise communicate with Mr. Bogan, she responded "no." (Tr. 11-12)

Based on that information, the trial court concluded there had been no communication or misconduct. According to the judge, she had initiated the hearing based on the mistaken understanding that they had communicated. Specifically, the court observed:

> I know and I've indicated to counsel at the sidebar that he was making faces and trying to communicate with me. I asked counsel to correct it and I think they did. So if it was that same thing I don't think it rises to a level where we need take it any further.

(Tr. 14) The transcript reflects that this hearing occurred at about 4:30 pm on Friday. The jury returned the following Monday, July 24, 2016. Not too long into that morning's deliberations, the jury sent out another note saying that it was at an impasse on three out of four counts. (Tr. 15) This is what the note said:

5

We are at an impasse on three out of four counts. Further deliberating would be fruitless. This morning the one juror erased out her name from the verdict form on Count Four, so we no longer have a verdict on that count.

(Tr. 15) Rather than bring the jury out to inquire and/or instruct it further, the court did this:

The Court has allowed all counsel to review this document, and at this point because of the numerous allegations of jury misconduct as well as the difficulty with the jury the Court is going to declare a mistrial.

(Tr. 15) The court then turned to scheduling an agreeable date for a new trial. The matter was eventually reset for August 22, 2017. (Tr. 17) The court never had the jury announce a verdict on the one count they had unanimously agreed upon.

The next day, the parties revisited the mistrial declaration, because Mr. Bogan's counsel wanted to follow up on information that the jury had reached verdicts on two of the four counts, but were ultimately only unanimous on count 1 – the murder A count. (Tr. 20) The court responded that because of the "juror misconduct" she did not announce the verdicts because, in her mind, they were not legitimate. The court went on to make the following findings:

Okay. The Court had -- by the time there was a lot of misbehavior in this case with the defendant and juror number five. The Court received notification on three occasions that the jury itself, in its deliberations, was having problems with juror number five. I don't remember the language but it has become a part of the record, and the Court did send those notes with the record indicating that they were having difficulties with juror number five and that they didn't think that she was competent to deliberate and that there was a problem.

Mr. Cleary has apparently gone to Canada, but he indicated to Ms. Driscoll that he immediately knew who the juror was that was having problems and that he had noted that juror number five and the defendant were mouthing to each other.

Additionally during the course of the trial it became known that one of the witnesses, who also is an employee of the court, had witnessed the defendant mouthing something to juror number five throughout the course of the trial.

6

The Court has noted through the trial that the defendant both mouthed things -- although I cannot say who he was mouthing it to, I did witness him mouthing things to people in the jury but I do know that he also mouthed things to me.

Because of the level of misconduct in the case and because the Court felt that the integrity of the proceedings had been compromised, the Court declared a mistrial. Now, the Court did that without information about the jury verdict. I now have in my possession the verdict of the jury because it was left on the table, so the Court does have with it a copy of the jury's verdict. However, that occurred after the Court had already declared a mistrial.

The Court has now had an opportunity to review the case law with reference to it and the Court -- the case law indicates that a verdict is an expression of the will of the jury announced in open court at the time the oral or written verdict is delivered to the trial court by the jury, and it is still true that the written verdict executed by the jury only becomes the verdict of the jury if and when it is affirmed or confirmed in open court by the jury as a group upon general inquiry by the clerk of court or by the individual members of the jury.

So, therefore, because this verdict had not -- let me just indicate that on count four, which was a verdict of guilty of domestic violence, juror number five simply --to delineate her name -- simply scratched her name out, but it's still visible, so you can see her signature.

 On count one, which was a murder charge, the jury had entered -- rendered a verdict of not guilty, but they were still deliberating about it and talking about the verdicts that they had rendered. These verdicts had not been taken by the Court or announced in open court and they came after the Court had rendered a mistrial on these proceedings. Therefore, the Court does not view them as a verdict in this court. And the trial -- the language of the Court of Appeals is replete with indications that the verdict is not a verdict until it's announced in open court.

Now, when I talked to the jury about what was going on and what causes the last indication to the Court, it was again juror number five, and they said that they had difficulties with her, that she had grabbed the verdict form and scratched her name off of -- on this form that they had just completed and that they were still talking about the other form and that they had taken several votes on the remaining counts, all of which apparently the vote was 11 to one for guilty on all the other counts.

But that's what happened in the deliberation room. It was not expressed in open court and the Court has declared a mistrial with reference to all of these proceedings.

7

(Tr. 20-24) Most of these "findings" are either contradicted or unsupported by this record.

Mr. Bogan appealed the trial court's ruling to the Eighth District Court State Court of Appeals raising the following assignment of error:

> The trial court's decision to grant a mistrial where there was no manifest necessity to justify doing so was unreasonable and any retrial on the underlying charges would violate the prohibition against Double Jeopardy under the State and Federal Constitutions.

In a divided opinion, the Eighth District unanimously agreed that there was no manifest necessity to warrant the *sua sponte* mistrial declaration. The Eighth District also agreed that the trial court's rationale for declaring a mistrial was contrary to law. Nevertheless, the court affirmed the decision to subject Bogan to another trial because, a majority of the court concluded, he impliedly consented to the mistrial.

Mr. Bogan sought leave to appeal in the Ohio Supreme Court raising the following proposition of law:

> *A defendant does not give implied consent to a mistrial, which the court declared spontaneously, without manifest necessity, and without seeking input from the parties, simply by not explicitly objecting to that declaration.*

Leave to appeal, however, was denied.

## CLAIM FOR RELIEF

1) The Petitioner is entitled to relief barring the State from retrying him in violation of the Double Jeopardy Clause of the United States Constitution's Fifth Amendment, which commands that no person shall "be subjected for the same offense to be twice put in jeopardy of life or limb."

2) The Fifth Amendment double jeopardy bar is applicable to state prosecutions through the Fourteenth Amendment.

3) In this case the trial court declared the mistrial and discharged the jury during deliberations, *sua sponte*, without seeking input from the parties or considering alternatives. The Eighth District agreed with Mr. Bogan that the court lacked manifest necessity for doing so. But, it also concluded that Bogan, through counsel, had impliedly consented to the mistrial.

4) The Eighth District found implied consent based on three circumstances: a) Bogan did not object when the court declared the mistrial (even though such an objection would be a nullity since the ruling had been made); b) Bogan's counsel moved for a mistrial three times during the course of the trial (but for entirely different reasons); and c) Bogan's counsel "actively engaged the court in scheduling a new trial date."

5) But the Eighth District never squared its reasoning with the fact that the trial court declared the mistrial spontaneously, without seeking input from the parties, and Bogan's counsel never had a chance to object. The court declared the mistrial out of the blue and its intention to declare it was not apparent to anyone.

6) The Double Jeopardy Clause establishes a fundamental right which prohibits the accused from being prosecuted multiple times for the same offense. It safeguards the accused from the retrial of unsuccessful prosecutions, while also ensuring his right to have a "trial completed by the first jury empaneled to try him." *Oregon v. Kennedy*, 456 U.S. 667, 673, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982).

7) There are two exceptions to this right. First, a court may declare a mistrial if the defendant, without intermeddling or goading from the prosecution, freely consents to the mistrial. *Kennedy*, 456 U.S. at 674. Second, even if a defendant does not consent, a court nevertheless may declare a mistrial if it makes a factual determination that there

is "manifest necessity" to do so. *United States v. Dinitz*, 424 U.S. 600, 606, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976). But in the absence of consent, a trial court may not declare a mistrial without manifest necessity. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S. Ct. 834, 93 L. Ed. 974 (1949).

8) The mistrial declared in Mr. Bogan's case meets neither of these exceptions. Implied consent in this context only occurs when the trial court expresses a clear intent to declare a mistrial, and the defense does not thereafter object when given the opportunity to do so. See, *United States v. Puleo*, 817 F.2d 702, 704 (11th Cir. 1987). Whether there is implied consent to the mistrial is determined based on the totality of the circumstances. *United States v. Sanford*, 429 U.S. 14, 16, 50 L. Ed. 2d 17, 97 S. Ct. 20 (1976). Importantly, consenting to a mistrial, which necessarily involves the waiver of a fundamental constitutional right, is not implied only from the defendant's silence or passive assent. *Marshall v. Ohio*, 443 F.Supp.2d 911, 917 (N.D. Ohio 2006).

9) That Bogan's counsel gave the court an available date for a new trial after she declared a mistrial does not prove that he consented to the mistrial. In *Washington v. Jarvis*, 137 Fed. Appx. 543 (4th Cir. 2005), trial counsel faced a nearly identical mistrial scenario. Like counsel in Mr. Bogan's case, Washington's counsel remained mute when the court declared the mistrial and then gave the court an available date for a second trial. The Virginia Supreme Court concluded that counsel's action or inaction amounted to implied consent. But the federal district court granted Washington's application for a writ of habeas corpus, concluding that a retrial court violated Washington's right under the Double Jeopardy Clause. *Washington v. Jarvis*, 307 F. Supp. 2d 794, 2004 U.S. Dist. LEXIS 4053 (E.D. Va., 2004).

10) In the *Washington* case, the State appealed, but the 4th Circuit affirmed, finding that the Virginia Supreme Court had unreasonably applied clearly established federal constitutional law when it concluded that the identified action or inaction by Washington's counsel demonstrated that he impliedly consented to the mistrial. The court began its analysis with the understanding that consent in this context waives an important federal constitutional right. While a court need not satisfy itself that the consent was "knowing, intelligent, and voluntary," *United States v. Dinitz*, 424 U.S. 600, 609 n.11, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976), it should nevertheless "indulge every reasonable presumption against waiver" of fundamental rights. See, e.g., *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 81 L. Ed. 1177, 57 S. Ct. 809 (1942). To that end, if there is any doubt regarding the status of those rights, they should be resolved "in favor of the liberty of the citizen, rather than exercise what would be an unlimited, uncertain, and arbitrary judicial discretion." *Washington v. Jarvis*, 137 Fed. Appx. 543, 553 (4th Cir. 2005); quoting, *Downum v. United States*, 372 U.S. 734, 738, 10 L. Ed. 2d 100, 83 S. Ct. 1033 (1963).

11) Based on this authority and on these facts, subjecting Mr. Bogan to a retrial would violate his federal constitutional right to be free from multiple prosecutions pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

**REQUEST FOR RELIEF**

In light of the foregoing, Petitioner Clarence Bogan prays that this court grant the following relief:

A. Grant his request to stay the state court proceedings pending a decision on this petition's merits; and

B.    Issue a writ of habeas corpus that Petitioner be brought before the court to be discharged from further prosecution by the State of Ohio and/or grant any other relief this Court deems just and proper.

    Respectfully submitted,

MARK A. STANTON
Cuyahoga County Public Defender

By: ERIKA B. CUNLIFFE, #0074480
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113
(216) 443-7583; (216) 443-8353
Email address: Peachliffe1@yahoo.com

Attorneys for PETITIONER
CLARENCE BOGAN

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she caused the above to be served on all respondents via hand delivery or the US Postal Service at the addresses identified in this pleading on April 12, 2019.

*s/Erika B. Cunliffe*
Assistant Public Defender