**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CLARENCE BOGAN, | ) | CASE NO. 1:19-cv-00812 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| RHONDA GIBSON, Warden, *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondents. | ) | |

Petitioner, Clarence Bogan, (hereinafter "Petitioner" or "Bogan"), challenges the constitutionality of his impending retrial in the case of *State v. Bogan*, Cuyahoga County Court of Common Pleas Case No. CR-16-605087-A. Petitioner, represented by counsel, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (R. 1). Cuyahoga County Common Pleas Court Judge Shirley Strickland Saffold, through the Cuyahoga County Prosecuting Attorney, filed a Return of Writ (R. 12), as did Cuyahoga County Sheriff Pinkney also through the Cuyahoga County Prosecutor's Office.[1] (R. 13). On July 1, 2019, Petitioner,

---

[1] On July 10, 2019, Petitioner filed a motion for leave to file an amended habeas petition seeking to remove respondents Cuyahoga County Prosecutor, Michael C. O'Malley, Cuyahoga County Court of Common Pleas Judge, Shirley Strickland Saffold, and Ohio Attorney General, David Yost from the action. (R. 21, PageID# 2750). The motion indicated the Cuyahoga County Sheriff, Clifford Pinkney, would remain in the action while the Warden of Cuyahoga County Jail, Rhonda Gibson, was also added as a respondent. *Id*. The court construed the motion as a motion to substitute parties, and granted it as such. (R. 23).

through counsel, filed an omnibus Traverse.[2] (R. 17). Respondent filed a reply on July 2, 2019. (R. 19). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I. Procedural Background

### A. Indictment and Pretrial

During its January 2016 term, the grand jury returned a four-count indictment against Bogan for aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A), murder in violation of O.R.C. § 2903.02(B), felonious assault in violation of O.R.C. §2903.11(A)(1) with a notice of prior conviction and repeat violent offender specifications, and domestic violence in violation of O.R.C. § 2919.25(A). (R. 11, PageID# 1411-1412).

On April 22, 2016, Bogan was assigned counsel and plead not guilty. (R. 11, PageID# 1378). On June 6, 2016, Bogan filed a motion requesting that his court-appointed attorneys be arrested. *Id*. at PageID# 1421-1426. On July 28, 2016, Bogan filed a motion seeking to represent himself. (R. 11, PageID# 1427-1428). A hearing was held on both motions, wherein the court denied them. (R. 11, PageID# 1415, 1440-1447). During the hearing, the trial court informed Bogan that hybrid representation is not permitted, and if there were any more motions he wished to file, he would have to file them through counsel.[3] *Id*.

On January 18, 2017, Bogan's attorneys indicated that the attorney-client relationship was irreparably damaged and requested to be removed from the case. (R. 11, PageID# 1413).

---

[2] On August 2, 2019, the court *sua sponte* struck the Traverse filed by Petitioner *pro se*, as he is represented by counsel. (R. 22).

[3] Despite the trial court's clear instruction, Bogan continued to file *pro se* motions, including a second request to represent himself. (R. 11, PageID# 1429-1433, 1435-1439).

The trial court appointed new counsel Jaye M. Schlachet and Vicki Ward to represent Bogan. *Id*.

**B. Trial Proceedings**

On July 13, 2017, during proceedings leading up to trial, Bogan addressed the court and alleged that the investigation and proceedings against him were corrupt and that the trial court was being unfair. (R. 11, PageID# 1565-1566). The trial court warned Bogan against any further outbursts in the courtroom during *voir dire* or trial. (R. 11, PageID# 1566).

1. *Voir Dire*

During *voir dire*, defense counsel notified the court that Bogan instructed them to ask questions that were inappropriate or against his best interests and that counsel's refusal to do so resulted in Bogan again wanting to represent himself. (R. 11, PageID# 1862-1863). The court rejected Bogan's request based on his prior affidavit stating that he knew he needed counsel. *Id*. Soon thereafter, in the middle of *voir dire*, Bogan stood up in the presence of the prospective jurors and the following outburst occurred:

> COURT: Sit down.
>
> DEFENDANT: He can take me out of here.
>
> COURT: Sit down. Don't you dare get up again.
>
> DEFENDANT: I'm innocent. I don't care about your gag order, nothing. I'm innocent and I asked my attorney to ask questions and they can't answer them. These people change the crime scene, everything. And you know it and you letting them do.
>
> COURT: Ladies and gentlemen, it's necessary we take a brief recess.
>
> BAILIFF: All rise.
>
> DEFENDANT: Sure is you try to - - I'm being railroaded for real. I was innocent. Take me on out of here, man.

(R. 11, PageID# 1865-1866).

3

After the jurors were escorted out of the courtroom, the record reflects that the trial court described the incident as Bogan "jumping out of his seat, yelling at the top of his lungs, throwing his hands around, grabbing his binder that's full of documents and yelling and screaming about he was innocent, that he was being railroaded[,] that Cuyahoga County was corrupted[,] and totally disrupted these proceedings." (R. 11, PageID# 1868). The trial court proceeded to again warn Bogan:

> Now, I want to get along with you. I want us to be able to communicate. But You're not going to disrupt these proceedings. You're not going to do things that impact the integrity of this proceeding. I'm not going to allow that. But I want you to be here. I want you to be able to participate with your lawyers. But you can't do and make gestures to the jury as you were doing. You can't do that. You can't yell up in the courtroom as you were doing.

(R. 11, PageID# 1870).[4]

On July 17, 2017, Bogan again indicated that he would like to represent himself. (R. 11, PageID# 1955-1956). After the court asked Bogan three times whether he wants to represent himself, he asked to consult with his attorneys. (R. 11, PageID# 1965-1966). After consulting with counsel, Bogan opted to be represented by counsel. (R. 11, PageID# 1966-1967).

On July 18, 2017, during the State's presentation of its case, the State requested a sidebar and advised the court that Bogan had consistently been attempting to communicate with the jury. (R. 11, PageID# 2291-2292).

> [Prosecutor]: Judge, throughout the trial Mr. Bogan is constantly mouthing things to the jury.
>
> Court: I know.

---

[4] Defense counsel believed the jury was tainted by Bogan's outburst and a new one was needed. (R. 11, PageID# 1879-1883). The trial court decided to continue the jury selection with the same jury pool. *Id.* When the prospective jurors returned, the trial court read a curative instruction concerning Bogan's outburst. (R. 11, PageID# 1889-1890).

4

[Prosecutor]: Obviously we can't cross-examine him. I don't know if you can address it. I just want to bring it up.

Court: Just start with the least enforcement. Would you please talk to your client and alert him that he should not do that?

[Defense counsel]: What is the perception that he has done, your Honor?

Court: Their perception and the court's perception is that he keeps mouthing things to the jury and making expressions to the jury and making expressions to me, too.

[Defense counsel]: Judge, I think the record should also reflect that he has not stopped talking to either Miss Ward or I for the entire trial as well. We are having the same difficulty. We will take the least restrictive approach and your advice and advise him once again.

Court: I think the law with reference to the procedure of the trial requires you do the least restrictive thing first.

[Defense counsel]: We've been trying.

(R. 11, PageID# 2291-2293).

The court again addressed the jury and gave them a curative instruction. (R. 11, PageID# 2293-2294).

During the testimony of a State's witness, the witness was asked why she wanted to be here [at trial], to which the witness responded: "[b]ecause an innocent woman that was tinier than me . . . woke up dead the next morning, or being dead the next morning by his own words." (R. 11, PageID# 2306). Defense counsel objected and moved to strike the statement, which the trial court overruled. *Id*. Defense counsel moved for a mistrial based on the witness's statement, which the trial court also denied. (R. 11, PageID# 2308).

During the testimony of the following State's witness, the State again requested a sidebar during which the State yet again informed the court that Bogan was "making faces at the jury." (R. 11, PageID# 2339).

[Prosecutor]: As soon as we sat down the defendant was making faces at the jury.

5

>Court: Again? Vicki.
>
>[Defense Counsel] You said I don't have patience. I tried. You said I'm very impatient. Jay has tried to tell him. He blew me off when I said - -
>
>Court: You've got to control your client.
>
>[Prosecutor]: Judge, now he is just sitting there laughing after Mr. Schlachet [defense counsel] told him not to do it.
>
>[Prosecutor]: He smirks and looks over at the jury and smirks and looks over at us.
>
>Court: Control.
>
>[Defense counsel]: Yes.

(R. 11, PageID# 2239).

Again, the trial court issued another curative instruction for the jury. (R. 11, PageID# 2239-2340).

After the completion of another witness's testimony, the State again advised the court about Bogan's persistent attempts to communicate with the jury. (R. 11, PageID# 2350).

>[Prosecutor]: I know we've addressed it at sidebar. The state would just request another instruction to the defendant to stop making faces and mouthing things to the jury. Thank you, your Honor
>
>Court: And the court - - let the record indicate the court has taken the unusual step of admonishing defense counsel on two previous occasions that they need to exercise better control over their client, that he is being disruptive by constantly whispering in their ear.
>
>* * *
>
>Court: He should not make faces to me, smirks and smiles.
>
>[Defense counsel]: We've asked him not to.
>
>Court: Or to the jury.
>
>[Defense counsel]: We've asked him, your Honor.

6

> Court: And he has done that continuously to me and to the jury.

(R. 11, PageID# 2350-2352).

During the testimony of the victim's probation officer, defense counsel objected to the witness's testimony that the victim indicated she was living with a man who beat her. (R 11, PageID# 2506). The objection was sustained, and defense counsel renewed his motion for a mistrial, which the court denied. (R. 11, PageID# 2507-2510).

On July 20, 2017, defense counsel again renewed his motion for a mistrial, which was denied. (R. 11, PageID# 2543).

On July 21, 2017, after jury deliberations began, the court received an inquiry from the jury foreperson. The question read as follows: "A number of jurors including myself are questioning the competency of juror, blank, to deliberate and render a verdict." (R. 11, PageID# 2564). The court reiterated its earlier instruction regarding jury deliberations. *Id*.

On the afternoon of July 21, 2017, the court held a hearing concerning improper communication between Bogan and Juror No. 5. (R. 11, PageID# 2566-2570). A courtroom attendee who had watched most of the trial testified that she witnessed Bogan mouth words towards the jury and that Juror No. 5 smiled back at him. *Id*. at PageID# 2567. The trial court determined that this activity did require further action at that time. (R. 11, PageID# 2570).

On July 24, 2017, the court received another note from the jurors which the trial court read: "We are at an impasse on three out of four counts. Further deliberating would be fruitless. This morning the one juror erased out her name from the verdict on Count Four, so we no longer have a verdict on that count." (R. 11, PageID# 2571). At this point, the court announced that "because of numerous allegations of jury misconduct, as well as the difficulty with the jury the Court is

going to declare a mistrial." *Id*. Defense counsel did not object in any manner to the trial judge's declaration that a mistrial was necessary, nor did defense counsel suggest other alternatives. To the contrary, defense counsel attempted to coordinate a date with the court for a retrial, and asked the court for permission to obtain another expert. (R. 11, PageID# 2571-2573).

**C. Post-Trial Hearings**

> On July 25, 2017, the parties were again before the court. The court observed as follows:
>
> [T]here was a lot of misbehavior in this case with the defendant and juror number five. The court received notification on three occasions that the jury itself, in its deliberations, was having problems with juror number five.
>
> I don't remember the language but it has become a part of the record, and the Court did send those notes with the record indicating that they were having difficulties with juror number five and that they didn't think that she was competent to deliberate and that there was a problem.
>
> Mr. Cleary has apparently gone to Canada, but he indicated to Ms. Driscoll that he immediately knew who the juror was that was having problems and that he had noted that juror number five and the defendant were mouthing to each other.
>
> Additionally during the course of the trial it became known that one of the witnesses, who also is an employee of the court, had witnessed the defendant mouthing something to juror number five throughout the course of the trial.
>
> \*\*\*
>
> Because of the level of misconduct in the case and because the Court felt that the integrity of the proceedings had been compromised, the Court declared a mistrial.

(R. 11, PageID# 2576-2577). For the first time, defense counsel suggested that the court could have taken "lesser sanctions" than declaring a mistrial, such as seating the alternate juror instead of Juror No. 5. *Id*. at PageID# 2582. The court reminded defense counsel that he had opposed seating the alternate juror, a point defense counsel conceded. *Id*. at PageID# 2582-2583. Defense counsel took the position that retrial was now barred by the Double Jeopardy Clause and maintained there was no evidence that Bogan had done anything to cause the mistrial. *Id*. at

8

PageID# 2587.

On August 22, 2017, Bogan's motion to dismiss based on Double Jeopardy grounds was denied after a hearing. (R. 11, PageID# 1414, 2619-2624).

**D. Direct Appeal**

On August 28, 2017, Bogan, through counsel, filed a Notice of Appeal. (R. 11, PageID# 1417-1418). Bogan raised one assignment of error: (1) "The trial court's decision to grant a mistrial where there was no manifest necessity to justify doing so was unreasonable and any retrial on the underlying charges would violate the prohibition against Double Jeopardy under the State and Federal Constitutions." *State v. Bogan*, 2018-Ohio-4211 at ¶1, 2018 WL 5096381 (Ohio Ct. App. Oct. 18, 2018).

On October 18, 2018, the Eighth District Court of Appeals ("state appellate court") affirmed the trial court's judgment, finding that Bogan had "implicitly consented" to the mistrial at the time it was declared on July 24, 2017. *Bogan*, 2018-Ohio-4211 at ¶28.

On April 3, 2019, the Ohio Supreme Court declined to accept jurisdiction pursuant to Ohio S. Ct. Prac. R. 7.08(B)(4) of Bogan's appeal from the state appellate court's decision. (R. 11, PageID# 1420).

**E. Federal Habeas Petition**

Despite being represented by counsel, the petition does not set forth clearly delineated grounds for relief but rather a series of contentions. (R. 1, PageID# 8-11). The court construes the petition as essentially raising a single ground for relief—that Petitioner's retrial after the trial court's *sua sponte* declaration of a mistrial would violate the Double Jeopardy Clause. (R. 1).

## II. Review on the Merits

### A. Applicable Law and Standard of Review

Bogan's detention does not arise out of a state-court conviction or judgment, as he is being held pending a trial. "In rare instances, a pretrial detainee may petition for habeas relief, but such claims are extraordinary. A claim of double jeopardy is one such claim because it is not only a defense against being punished twice for the same offense, but also a defense against being subjected to a second trial—a right we cannot vindicate after a trial is complete, no matter the outcome." *Christian v. Wellington*, 739 F.3d 294, 297 (6th Cir. 2014) (citing *Abney v. United States*, 431 U.S. 651, 660 (1977) ("[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence.")). To facilitate such review, the Sixth Circuit has "long recognized that pretrial detainees pursue habeas relief instead under § 2241" rather than under § 2254. *Phillips v. Ct. of C.P., Hamilton Cnty.*, Ohio, 668 F.3d 804, 809 (6th Cir. 2012). Therefore, Bogan's petition for habeas relief is properly classified as arising under 28 U.S.C. § 2241.

The standards that apply to § 2241 habeas petitions are "significantly less demanding" than the deference accorded to petitions arising under § 2254(d). *Phillips*, 668 F.3d at 810 (citing *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011) ("[t]he deferential standard afforded to state court decisions, which is specifically articulated in § 2254, is not included in the text of § 2241"). Therefore, "habeas petitions governed by § 2241 are not subject to the heightened standards contained in § 2254(d)," and federal courts "must conduct a de novo review of the state court proceedings" in addressing such a petition. *Phillips*, 668 F.3d at 810.

**B. Analysis**

In his sole ground for relief, Bogan argues that a second trial would violate his right to not be placed twice in jeopardy for the same offense. (R. 1.) Specifically, Bogan asserts that the trial court's *sua sponte* declaration of a mistrial was not based on a "manifest necessity" to do so. (R. 1 & 17). Bogan further asserts that he did not impliedly consent to a mistrial as found by the state appellate court. *Id*. Respondent asserts that Bogan did not object to the trial court's declaration of a mistrial, and further that the totality of the circumstances demonstrate that Bogan consented to the court's ruling. (R. 13, PageID# 2658). Furthermore, Respondent has argued that Bogan "wanted this mistrial" based on his repeated outbursts, and that the defense also made multiple requests for a mistrial. (R. 12, PageID# 2463).

The Sixth Circuit Court of Appeals has explained that there are two exceptions to the general rule that prohibits a second trial after jeopardy attaches:

> The Constitution prohibits any person from being subject "for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Jeopardy attaches when a jury panel is seated and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury ... is barred unless (1) there is a 'manifest necessity' for a mistrial or (2) the defendant either requests or consents to a mistrial." *Watkins v. Kassulke*, 90 F.3d 138, 141 (6th Cir. 1996).

*Camp v. Berghuis*, 601 Fed. App'x 380, 383-384 (6th Cir. 2015).

Because the state appellate court's holding was rooted in the second exception to the general rule, the court confines its consideration to the issue of whether Petitioner, through his defense counsel, impliedly consented to the mistrial.[5]

---

[5] While arguably there may have been a "manifest necessity" for the trial court to declare a mistrial, especially given Bogan's repeated disruptive behavior and general misconduct, the court makes no recommendation on this issue. "The Supreme Court has stated that the manifest necessity standard is limited to those situations '[w]here the trial is terminated over the objection

The state appellate court explained in its decision that it need not address the issue of manifest necessity because it found there was implied consent:

{¶ 28} … [W]e find the unique circumstances of this case do not require this court to evaluate the substantive basis supporting the court's discretionary finding of manifest necessity. For the reasons that follow, we find Bogan implicitly consented to the mistrial at the time it was declared on July 24, 2017. Therefore, he cannot now claim his retrial is barred by the principle of double jeopardy. *See State v. Jackson*, 6th Dist. Lucas No. L-89-196, 1990 WL 40138, 1990 Ohio App. LEXIS 1340 (April 6, 1990).

{¶ 29} As stated, "[t]he general rule is that mistrials, granted at the request of defendant or *with the defendant's consent*, do not bar retrial on the basis of double jeopardy." (Emphasis sic.) *Id*. at 4, citing *U.S. v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *U.S. v. Puleo*, 817 F.2d 702 (11th Cir. 1987). In determining whether a defendant has consented to the declaration of a mistrial, the consent need not be expressly stated. *Id*., citing *Puleo* at 705. Rather, consent may be implied from the "totality of the circumstances attendant on a declaration of mistrial." *Id*., citing *U.S. v. Goldstein*, 479 F.2d 1061, 1067 (2d Cir. 1973). For instance, in *Puleo* and *Jackson*, the courts held that "when a defendant has had an opportunity to object to the declaration of a mistrial and fails to do so his consent to the declaration of a mistrial may be implied." *Puleo*, at 705; *Jackson* at 4.

{¶ 30} In this case, our review of the record demonstrates that Bogan did not expressly object to the trial court's declaration of a mistrial during the July 24, 2017 hearing. Bogan had a meaningful opportunity to raise an objection to the mistrial declaration during the remainder of the hearing, but chose to forego that opportunity. *See Love v. Morton*, 944 F.Supp. 379 (D.N.J. 1996) ("Counsel has ample meaningful opportunity to object where following a mistrial declaration the trial judge remains available to entertain other objections, schedule the second trial, or otherwise discuss the case with counsel.") We recognize that the failure to object is just one factor to be considered and may not always equate to a finding of implied consent. *See Washington v. Jarvis*, 137 Fed. Appx. 543, 554 (4th Cir. 2005) (finding the United States Supreme Court has always required that consent to mistrial must be determined based on a "totality of the circumstances" and has never adopted a bright-line rule that consent is implied when a defendant has an opportunity to object but does not explicitly express an objection). Nevertheless, we conclude that a finding of implied consent is warranted in this case.

---

of the defendant.'" *Wilson v. Belleque*, 554 F.3d 816, 832 (9th Cir. 2009) (quoting *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982)); *see also United States v. Smith*, 621 F.2d 350, 351 (9th Cir. 1980) ("An implied consent to a mistrial, like an express consent, removes any double jeopardy bar to retrial.")

{¶ 31} Beyond the lack of an express objection, Bogan's consent may be implied from the "totality of the circumstances attendant on the declaration of a mistrial," including the motions raised on Bogan's behalf during trial and defense counsel's conduct during the July 24, 2017 hearing. As discussed, defense counsel zealously maintained, on separate occasions, that the trial court was required to declare a mistrial due to its admission of highly prejudicial testimony during the trial. In fact, counsel renewed her motion for a mistrial just prior to the conclusion of trial on July 20, 2017. In addition, the record reflects that immediately following the court's declaration of a mistrial on July 24, 2017, defense counsel actively participated in the scheduling of the retrial, agreed to a tentative new trial date, requested the trial court to consider allowing the defense to obtain an additional expert witness for retrial, and requested the trial court to thank the jury on behalf of the defense.

{¶ 32} Individually, each of the foregoing circumstances may not equate to a finding of consent. Collectively, however, we can only view Bogan's acceptance of the court's judgment as consensual, intentional, and consistent with defense counsel's repeated requests for a mistrial during trial, albeit on different grounds. This was more than a case of uninformed silence.

{¶ 33} We recognize that defense counsel actively raised concerns with the trial court's declaration of a mistrial during the July 25, 2017, and August 20, 2017 hearings. However, we do not find Bogan's subsequent objections to the trial court's judgment served to rescind the implicit consent given during the July 24, 2017 hearing. In this case, it is evident that the July 25, 2017 hearing was only held to assess defense counsel's belief that a final verdict had been rendered on Count 1 of Bogan' s indictment. It did not morph into a debate on the substantive merits of the trial court's mistrial declaration until the court rejected defense counsel's final verdict argument, and after counsel became aware of the jury's preliminary not guilty verdict on Count 1. Thus, defense counsel's objections were predicated on the discovery of favorable information that was not known at the time implied consent was given. In addition, the timing of counsel's objections precluded practical consideration, as they were not raised until after the court had discharged the jury. Accordingly, the arguments posed by counsel during the July 25, 2017, and August 20, 2017 hearings have no bearing on our analysis.

{¶ 34} Having determined the mistrial was not declared "without defendant's consent, the presence or absence of manifest necessity is not a consideration." *State v. Mengistu*, 10th Dist. Franklin No. 02AP-497, 2003-Ohio-1452, ¶ 28, citing *Oregon*, 456 U.S. at 672, 102 S.Ct. 2083, 72 L.Ed.2d 416; *U.S. v. Mitchell*, 736 F.2d 1299, 1300 (9th Cir. 1984) ("Where defendant consents to a mistrial * * * the 'manifest necessity' doctrine does not come into play and as a general rule retrial is permitted because defendant himself has elected to terminate the proceedings and begin afresh"); *U.S. v. DiPietro*, 936 F.2d 6, 9 (1st Cir. 1991) (manifest necessity test does not apply when defendant has effectually consented

> to the mistrial). Thus, we find Bogan's challenges to the trial court's finding of a manifest necessity are not determinative and do not implicate the double jeopardy protections afforded under the state and federal constitutions.

*State v. Bogan*, 2018-Ohio-4211, ¶¶ 28-34.

Although the court, as explained *supra*, owes no level of deference to the state appellate court's analysis because Petitioner has filed a § 2241 petition, this court finds no fault with the state appellate court's thorough review of the circumstances that resulted in the mistrial. Furthermore, the state appellate court's reasoning is sound and the court, considering the totality of the circumstances as set forth in the beginning of this report and recommendation *de novo*, adopts the state appellate court's determination. Notably, the state appellate court reasonably concluded that there was implied consent based on the following circumstances.

First, Petitioner did not object to the trial court's declaration of a mistrial at the July 24, 2017 hearing, despite having a meaningful opportunity to do so during the remainder of the hearing. Second, the lack of objection is further demonstrated, as pointed out by the state appellate court, by defense counsel's participation in rescheduling the trial and asking for permission to obtain another expert *immediately after* the court's declaration of a mistrial. Petitioner's contention his counsel "never had a chance to object," is not well taken. (R. 1, PageID# 9). Moreover, "the decision to declare a mistrial is not irreversible until the jury has been discharged." *Marte v. Vance*, 480 Fed. App'x 83, 85 (2d Cir. 2012). Defense counsel cannot sit by and feign acquiescence all the while planning a subsequent objection after the jury is discharged. *Marte*, 480 Fed. App'x at 85 (observing that not recognizing "implicit consent in counsels' action (and inaction) in response to the trial court's preview of its intended response to the jury report of impasse [a declaration of a mistrial] would allow defense counsel to create 'the false impression of acquiescence even while anticipating a subsequent objection'"). Simply put,

14

there was nothing to prevent Bogan's counsel from objecting to the trial court's stated intention to declare a mistrial or to argue against such a course of action.[6]

Indeed, defense counsel's failure to object to the declaration of a mistrial is not always, in and of itself, dispositive on the issue of implied consent, but it can certainly contribute to a finding of implied consent. *Camp*, 601 Fed. App'x at 384. The state appellate court did not rely on this fact alone, but also noted that Petitioner repeatedly moved for a mistrial, including just prior to the conclusion of trial. This court also finds these facts highly relevant and, combined with other circumstances, leads to a reasonable determination that Petitioner impliedly consented to the mistrial.

Petitioner's reliance on *Washington v. Jarvis,* 137 Fed. Appx. 543 (4th Cir. 2005) is misplaced. (R. 17, PageID# 2729). In *Washington*, the Fourth Circuit Court of Appeals found the Virginia Supreme Court's determination that the defendant had impliedly consented because there was no *express* objection was unreasonable. *Id*. The Fourth Circuit acknowledged that defense counsel did not explicitly utter the words "I object" when addressing the trial judge's declaration of a mistrial, but found defense counsel's language, "taken in the context of the discussion, did make it clear to all relevant parties that she was contesting the issue of double jeopardy." *Id*. In *Washington*, the Fourth Circuit quoted passages from the trial transcript that

---

[6] Petitioner's traverse avers that "the court declared the mistrial abruptly and immediately discharged the jury." (R. 17, PageID# 2728). This statement is inaccurate or, at the very least, unsupported by any citation. A review of the relevant trial transcripts from July 24, 2017, gives no indication that the jury was discharged before defense counsel could respond or before defense counsel engaged in a prolonged discussion with the court concerning rescheduling of the trial and the request for an additional expert witness. (R. 11, PageID# 2571-2575). In fact, following the aforementioned prolonged discussion with the court, defense counsel requested that the judge "[t]hank the jury for us … for their efforts," which is highly indicative that the jury had not been discharged. As such, Petitioner's assertion that the jury was discharged before defense counsel could object is unsupported.

show the defense unambiguously did *not* consent to the mistrial and the trial judge stated as much.[7] *Id*. at 545-546. In *Washington*, defense counsel's objection was obvious, based on the reading of the transcript, even if not explicit, and the Fourth Circuit rightly declined to elevate form over substance. Here, no objection can be inferred from defense counsel's conduct. Quite the opposite, all of defense counsels' actions before and at the time the trial court declared a mistrial were indicative of tacit agreement with the trial court's decision.

In addition, Petitioner complains that Respondents have cherry-picked from the record (R. 17, PageID# 2718), but the court disagrees. Instead, Respondents have appropriately set forth a detailed recitation of the facts and circumstances surrounding the trial court's declaration of a mistrial, including Petitioner's repeated and inappropriate attempts to communicate with the jury during trial, which Petitioner tries to downplay as simply a symptom of his "mercurial nature." *Id*. The Sixth Circuit's "test for whether a defendant has impliedly consented to a mistrial is not materially different from the test used by other Circuits … [and] insists on an especially careful examination of the totality of circumstances, to ensure a defendant's consent is not implied when there is a substantial question of whether the defendant did, in fact, consent." *United States v. Gantley*, 172 F.3d 422, 428-429 (6th Cir. 1999).

The court has examined the totality of circumstances and agrees with the state appellate court's conclusion that Petitioner impliedly consented to a mistrial. Therefore, the sole assignment of error is without merit.

---

[7] After declaring a mistrial, the trial judge stated that "[n]ow [defense counsel] is going to move to dismiss on double jeopardy grounds." *Washington*, 137 F. App'x at 545. In the case at bar, defense counsel raised no double jeopardy concerns until the following day—only after the jury had been dismissed. The issue of implied consent, however, is determined by the totality of the circumstances at the time the mistrial is declared.

## III. Conclusion

It is recommended, for the foregoing reasons, that Petitioner's Petition for a Writ of Habeas Corpus be DENIED.

/s/ David A. Ruiz
U.S. MAGISTRATE JUDGE

Date: October 10, 2019

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.** See *United States v. Walters*, **638 F.2d 947 (6th Cir. 1981);** *Thomas v. Arn*, **474 U.S. 140 (1985)**, *reh'g denied*, **474 U.S. 1111 (1986).**